MIROSLAV M. HAMERSKY, APPELLANT, V. NICHOLSON SUPPLY CO., APPELLEE.

517 N.W.2d 382

Filed June 10, 1994.   No. S-92-1122.

Robert F. Bartle, of Healey & Wieland Law Firm, for appellant.

George C. Rozmarin and Mary Kay Frank, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

HASTINGS, C.J.

The plaintiff, Miroslav M. Hamersky, appeals a summary judgment entered in favor of the defendant, Nicholson Supply Co., and against him on his claim for damages for wrongful termination and age discrimination under title 11 of the Lincoln Municipal Code. The plaintiff asserts that the district court erred in (1) failing to find that the defendant's employee handbook, together with the defendant's actions and statements to the plaintiff, constituted an agreement not to discharge him except for good cause; (2) failing to find that the defendant's oral assurances, in conjunction with company practice and policy, created an expectation of permanent employment and constituted a modification of any at-will status of his employment; (3) determining that there was no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law; and (4) failing to find that the actions of the defendant in wrongfully discharging the plaintiff, without notice or due process, constituted age discrimination and a violation of the Lincoln Municipal Code. We transferred this case to our docket as part of our authority to equalize caseloads.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994); *Rowe v. Allely*, 244 Neb. 484, 507 N.W.2d 293 (1993).

According to the plaintiff's petition and the affidavits on file, the plaintiff was born on June 30, 1933.

He was employed as a sales representative by the defendant from 1970 until January 22, 1992. From 1970 until 1987, he worked as an "outside" sales representative in a territory in west and central Nebraska. In the spring of 1986, he was advised by company representatives that he would be allowed to move from an outside sales position to an "inside" position, on a salary basis, until his retirement. Also in 1986, because of the retirement of another sales representative, he was asked to move to a different sales territory south of Lincoln. He worked this sales position on a "draw-plus-commission" basis from 1986 until approximately March 1991. At that time, he requested and was allowed to move from the outside sales territory to an inside position. His primary responsibilities were to handle telephone sales, training of other sales representatives, and other office duties. He received a flat hourly wage. Between May and September 1991, he trained three sales representatives. From September 1991 until his discharge in January 1992, he performed office duties and also worked as a sales representative in northeast Lincoln and around Ashland, Nebraska. The plaintiff did not receive additional compensation or commissions for these duties.

On January 15, 1992, the plaintiff was discharged from his employment "without any notification, cause or reason." This action was allegedly in disregard of oral assurances of continued employment, past practices of the company, and implicit assurances given in the company's employment handbook.

The plaintiff first contends that the district court erred in failing to find that the defendant's employee handbook, interpreted with the defendant's actions and statements, constituted an agreement not to discharge him except for good

cause.

We recently stated, in *Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 223, 512 N.W.2d 358, 361 (1994), that "[u]nless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason."

An employee's at-will status can be modified by contractual terms that may be created by employee handbooks and oral representations. *Hillie v. Mutual of Omaha Ins. Co., supra; Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10 (1988).

In *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 738, 408 N.W.2d 261, 266 (1987), we noted:

> [I]f the handbook language constitutes an offer definite in form which is communicated to the offeree, and the offer is accepted and consideration furnished for its enforceability, the handbook provision becomes part of the employment contract. . . . In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. . . . The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.

The plaintiff argues that the defendant's February 2, 1987, handbook, unlike many such handbooks, does not specifically limit the rights of employees; he also refers us to general language regarding loyalty to the company. He further asserts that there is an "implicit assurance" in the section of the handbook which states that " 'employees who quit or are discharged for causes shall not be eligible for any unused paid vacation.' " The plaintiff contends that this reference clearly implies that "employees leave Nicholson Supply only by way [of] quitting or being fired for cause." Brief for appellant at 9. To the contrary, the language means what it says; if an employee quits or is discharged for cause, he or she will not be entitled to unused paid vacation time. If one is terminated for any other reason, that person would be entitled to vacation benefits.

In an action for breach of a contract of employment, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract. *Hillie v. Mutual of Omaha Ins. Co., supra.*

The referenced language in the defendant's employee handbook clearly does not constitute an offer definite in form, and thus, the plaintiff has failed to prove that the handbook supports the formation of a unilateral contract.

The plaintiff next asserts that the district court erred in failing to find that the defendant's oral assurances, in conjunction with its practice and policy, created an expectation of permanent employment and constituted a modification of any at-will status of his employment.

Oral representations may, standing alone, constitute a promise sufficient to create contractual terms which could modify the at-will status of an employee. *Hillie v. Mutual of Omaha Ins. Co., supra; Hebard v. AT&T, supra.*

In regard to oral representations, the plaintiff states in paragraph 5 of his affidavit:

> In approximately Spring of 1986, I was advised by company representatives, including Steve Nicholson, an officer and treasurer of Nicholson Supply Company, that I would be allowed to move from an outside sales position to an "inside" position, on a salary basis, until my retirement. In other words, I understood my job would be secure, even if I elected to give up my sales territory and commission income to avoid the strain of travel associated with outside sales.

The defendant properly asserts that an employee's subjective understanding is insufficient to defeat the at-will employment doctrine.

An employee's subjective understanding of job security is insufficient to establish an implied contract of employment to that effect. *Hillie v. Mutual of Omaha Ins. Co., supra; Johnston v. Panhandle Co-op Assn., supra.*

It must be conceded from the record that paragraph 5 of the plaintiff's affidavit is the only specific reference to any assurances given to him. However, in an apparent reference to paragraph 5, the plaintiff states in paragraph 3 of his affidavit:

"[A]s I describe more completely below, I was provided oral representations and assurances by company management representatives concerning the nature and permanency of my employment, *unless I was specifically discharged for cause.*" (Emphasis supplied.)

Nevertheless, the additional allegations are conclusionary in nature and make no reference to specific facts. We thus are left with a bare statement of "fact" that the plaintiff would be permitted to work inside until his retirement.

In appellate review of a summary judgment, the court reviews the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994); *Rowe v. Allely*, 244 Neb. 484, 507 N.W.2d 293 (1993).

In *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980), we rejected an employee's argument that his employment was to last until his retirement at age 65, based on his employer's statements that he was to have a "career" at the bank. The plaintiff attempts to distinguish this case from *Mau* in that here the plaintiff claims to rely on alleged specific assurances of employment until his retirement.

Cited with approval in *Mau* is *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976), in which the employee claimed that the employer's designation of him as a "permanent" employee took him out of the at-will status. The Kansas court said that "an agreement to give permanent employment simply means to give a steady job of some permanence, as distinguished from a temporary job or temporary employment." *Id.* at 55, 551 P.2d at 782.

At another point in his affidavit, the plaintiff states:

In approximately March, 1991, at a company sales meeting in Omaha, attended by both Jack Nicholson and the sales manager, Steve Aerts, to whom I reported at this time, I requested and was allowed to move from my outside sales territory to a [sic] "inside" position with the company. . . . In agreeing to this new position, Mr. Nicholson not only acknowledged past assurances given

to me, but also asked me to accept a flat hourly wage, as opposed to prior commissions. I agreed to do this, at a level roughly equivalent to the compensation level I received in 1990.

In his affidavit, Jack Nicholson states:

To my knowledge, Mr. Hamersky, during his period of employment with Nicholson Supply Company, was never given any written assurances, and no oral statements were made to him by company management or representatives, to the effect that his employment with Nicholson Supply Company was permanent in nature or that he could be discharged only for cause.

In any event, the plaintiff's affidavit lacks specificity in regard to his reliance on "company practice and policy," and the only assurance made was that he "would be allowed to move from an outside sales position to an 'inside' position, on a salary basis, until [his] retirement." This is no more time-specific than having a "career" or "permanent employment." We conclude that the only conclusion properly drawable from the undisputed facts is that the plaintiff's employment was for an indefinite period.

As his final assignment of error, the plaintiff contends that the district court erred in failing to find that the conduct, actions, and decisions of the defendant in wrongfully discharging him, without notice or due process, constituted age discrimination and a violation of title 11 of the Lincoln Municipal Code. The applicable ordinance does not appear in the record. In *Hawkins Constr. Co. v. Director*, 240 Neb. 1, 480 N.W.2d 183 (1992), we reiterated the rule that courts of general jurisdiction will not take judicial notice of municipal ordinances not present in the record, nor will appellate courts on appeal. We further stated:

Without the benefit of the applicable municipal ordinances involved, neither a district court nor an appellate court is in a position to declare the rights of the parties under the ordinances, any more than a court could declare the rights of parties to a contract without the benefit of the contract.

*Id.* at 2, 480 N.W.2d at 184.

The plaintiff's assignments of error are without merit. The judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH, J., participating on briefs.